# Richmond

## ELIZABETH SMITH GARNETT v. WILEY C. PAUL, ET AL.

November 27, 1961.

Record No. 5302.

Present, All the Justices.

*Aubrey R. Bowles, Jr.* and *H. Armistead Boyd* (*Bowles, Boyd & Herod,* on brief), for the plaintiff in error.

*Harry P. Anderson, Jr.* (*Donad R. Taylor; Satterfield, Haw, Anderson, Parkerson & Beazley,* on brief), for defendant in error, Wiley C. Paul.

*Edward A. Marks, Jr.* (*Sands, Anderson, Marks & Clarke,* on brief), for defendant in error, Osbourne Milton Glenn.

WHITTLE, J., delivered the opinion of the court.

Wiley C. Paul, hereinafter referred to as plaintiff, was riding in a Ford pick-up truck operated by Osbourne Milton Glenn when the truck and a Chevrolet sedan operated by Mrs. Garnett collided. As a result Paul was injured and brought this action against Mrs. Garnett and Glenn. The motion for judgment charged Mrs. Garnett with ordinary negligence and Glenn with gross negligence on the theory that Paul was Glenn's guest at the time of the collision.

At the trial Paul moved the court for permission to amend his motion for judgment so as to allege that he was a passenger and not a guest in Glenn's truck. In ruling on the motion the court said: "I don't think I could grant an amendment without granting Mr. Marks [Glenn's counsel] a continuance." Whereupon, plaintiff did not insist upon his motion and the case proceeded to trial on the theory of gross negligence on the part of Glenn and ordinary negligence on the part of Mrs. Garnett. The jury returned a verdict for $5,000 against both defendants.

A motion by Glenn to set aside the verdict as to him on the ground that as a matter of law there was no evidence of gross negligence on his part was sustained and final judgment entered in his favor. A motion by Mrs. Garnett to set aside the verdict as to her was overruled and judgment entered against her, from which ruling we granted her a writ of error.

The record discloses that the accident occurred on May 22, 1960, at about 2:00 p.m., on a clear, dry day. The collision took place at Shacklefords, in King and Queen County, about six miles east of West Point, at the intersection of State Routes 14 and 33. Both highways are hard surfaced and run through open country. Route 33 runs east and west and Route 14 runs north and south and dead-ends on the south side of Route 33. Back from the intersection Route 14 is 18 feet wide and Route 33 is 22 feet wide. As Route 14 approaches Route 33 it is divided by a traffic island located about 18 feet south of the south line of Route 33, the lane east of the island being for northbound traffic on Route 14 and the west lane being for southbound traffic. There is a "Yield Right-of-Way" sign on the island facing northbound traffic on Route 14 with a white "stop-bar" painted across the northbound lane of Route 14. The sign and stop bar are located about 18 feet back on Route 14 before it intersects Route 33.

Glenn was operating his truck north on Route 14. The plaintiff was sitting in the cab to Glenn's right. They were returning from a turtling expedition. Mrs. Garnett was traveling west on Route 33, her destination being West Point.

Plaintiff testified that Glenn stopped his truck on Route 14 at a point opposite the "yield" sign which he estimated to be 25 feet from the south line of Route 33. While in this stopped position both plaintiff and Glenn looked to the right but failed to see any oncoming traffic. Just as the truck started forward plaintiff saw Mrs. Garnett's car, which he estimated to be about 500 feet from the intersection. He immediately called Glenn's attention to the oncoming vehicle which he estimated at that time to be about 175 to 200 feet from the intersection. When plaintiff "hollered" his warning to Glenn the truck had just started forward from a point 18 to 25 feet from the south line of Route 33, moving "very slow—barely moving", and "kind of creeping." Glenn brought his truck to a stop about 5 feet in the east bound lane of Route 33.

Mrs. Garnett admitted that she was familiar with the intersection which she was approaching. In addition, there is a marker indicating

the intersection some distance from it, warning traffic approaching from the direction in which Mrs. Garnett was coming.

The Garnett car skidded 140 feet, crossed the solid white line and came over 5 or 6 feet into the eastbound lane of Route 33, collided with the Glenn truck, rammed its entire front into that area of the truck which "would be the right front wheel well back to the edge of the door on the right side." The impact knocked the 3,000 pound truck down the road 45 feet and the car continued on from the point of impact 62 feet, leaving "swerve marks, etc. skid marks" to where it came to rest. The Garnett car laid down a total of 202 feet of skid marks.

Mrs. Garnett says the errors assigned resolve themselves into six questions. They will be treated in the order enumerated.

The first question is: Did the plaintiff, as a matter of law, fail to establish the primary negligence of Mrs. Garnett? This must be answered in the negative. Her negligence or freedom from negligence was, under the circumstances, a jury question, and the physical facts outlined above and the further fact that plaintiff testified that Mrs. Garnett's car was traveling at from 55 to 60 miles per hour when the impact occurred, were ample to show negligence on her part.

The second question is: Was the plaintiff guilty of contributory negligence as a matter of law? This must also be answered in the negative. The record discloses that plaintiff saw the approaching Garnett car when it was 500 feet away and called Glenn's attention to it. He definitely appeared to be more watchful than either Mrs. Garnett or Glenn for Mrs. Garnett said she did not see the Glenn truck, which was going "real slow", until she was within 200 or 300 feet of the intersection, and Glenn said he did not see the Garnett car until he was warned by the plaintiff.

The question of the plaintiff's contributory negligence was submitted to the jury under proper instructions and the jury found, as it had a right to do under the evidence, that he was free from such negligence.

The third question as stated by Mrs. Garnett is: "Were the plaintiff and Glenn on a joint venture so that the clearly established ordinary negligence of Glenn was imputable to the plaintiff, barring his recovery against this defendant [Mrs. Garnett] as a matter of law?"

Apparently Mrs. Garnett contends that she should have been granted leave to amend her pleadings so as to allege a joint venture between Paul and Glenn which, if established, would have made the negligence of Glenn imputable to Paul. We find no motion in the record prior

to the verdict requesting permission to amend, nor do we find where any point was saved by Mrs. Garnett to any ruling of the court dealing with the subject.

Plaintiff's counsel in his opening statement said that the evidence would show that the plaintiff was a passenger for hire because he had purchased on the morning of the accident $2.00 worth of gasoline for Glenn's truck in accordance with an agreement that Glenn would take plaintiff to and from work. There was no such allegation in the pleadings. When the amendment to the motion for judgment was requested by plaintiff, the court ruled that he could not allow the amendment without granting the defendant Glenn a continuance, and the case proceeded to trial without the amendment.

While plaintiff excepted to the refusal of the court to grant the amendment, Mrs. Garnett noted no such exception nor did she offer any amendment to her pleadings alleging imputable negligence; she offered no instruction thereon and did not except to any ruling of the court on this point. The record is void of any attempt on Mrs. Garnett's part to have the doctrine of imputable negligence invoked before the verdict was rendered.

On the contrary, plaintiff's Instruction No. 5 told the jury that the negligence of Glenn was not to be imputed to the plaintiff and this instruction was given without exception. In fact, counsel for Mrs. Garnett, at the time of the offering of the instruction, told the court that it was a correct statement of the law but since the point had not been raised, "I don't see why you should give that instruction."

When Instruction No. 5 was given without exception, it became the law of the case and the defendants were bound by it.

The fourth question is: Was the jury misdirected?

Under this heading Mrs. Garnett first contends that the court erred in not permitting the plaintiff to amend his motion for judgment so as to allege that plaintiff was a passenger and not a guest in Glenn's truck. This has been heretofore dealt with and is without merit.

■ Mrs. Garnett next contends that Instruction No. D-3 [1] was

---

[1] The court instructs the jury that it was the duty of the defendant, Mrs. Garnett, in the operation of her car upon the highway, to use reasonable care in the following respect: to take advantage of what proper lookout disclosed; to keep her vehicle under proper control, so as to be able to slow down, change course, or stop if necessary to avoid a collision; to drive her vehicle on her own right half of the highway; these were continuing duties and required to be performed at all times. If you believe from a preponderance of the evidence that Mrs. Garnett negligently failed to perform one or more of these duties, and that such failure on

improper. As we gather from her brief and argument at bar, the basis of objection to this instruction is that it did not take into consideration the sudden emergency doctrine contended for by her. In arguing the exception to this instruction counsel for Mrs. Garnett stated: "We except to the granting of it on the ground that it in effect makes Mrs. Garnett an insurer that there would be no collision and has the effect of directing a verdict against her merely because of the fact that under the circumstances she drove her car to the left of the center of the highway."

It is argued that Instruction No. D-3 is misleading and is in conflict with Instruction No. D-D,[2] which latter instruction, offered by Mrs. Garnett, embraced the sudden emergency theory.

Instructions of the court are to be considered by the jury as a whole, and the jury in this case was fully instructed. There were no less than five finding instructions offered and given on behalf of Mrs. Garnett and yet the jury found, as it clearly had a right to do under the related evidence, that Mrs. Garnett was guilty of negligence which proximately contributed to the accident.

The objection to Instruction No. D-3 was vague and indefinite. Under the circumstances we find no reversible error in the giving of the instruction.

■ The fifth question is: Was inadmissible evidence admitted to the prejudice of this defendant?

In this connection a turtler, one Edward Hicks, was introduced to substantiate the plaintiff's activities as a turtler and to throw light on the average earnings of turtlers in the area so that the jury might compare it with plaintiff's testimony as to his earnings which he estimated to be about $50 a week. Hicks was asked:

"Q. Are you familiar with the average earnings of turtlers in this area?

"Mr. Boyd [Counsel for Mrs. Garnett]: We object to that.

---

her part, if any, was a proximate cause of the accident, then she is liable in damages to the plaintiff, and you should find your verdict in favor of the plaintiff against Mrs. Garnett.

[2] The court instructs the jury, that if you believe from all the evidence in this case that the defendant, Mrs. Garnett, in an effort to avoid a collision with the pick-up truck driven by the defendant, Glenn, drove to the left of the center of the highway because of a sudden emergency created by Glenn and without fault on the part of Mrs. Garnett, and that Mrs. Garnett acted as a person of ordinary prudence might have acted under the same circumstances, then in so doing she was not guilty of any negligence even though her choice of action was not the wisest course and actually contributed to the collision and injuries to the plaintiff, and you must find your verdict for Mrs. Garnett.

"The Court: The objection is overruled, I note your exception.

"A. I don't turtle all the time, I catch live bait, too."

The answer was not responsive and was harmless. In order to clear it up the court asked:

"Q. What he wants to know is this: A man who devoted his time to turtling in 1959, what his earnings would have been?"

The witness answered: "If he turtled every day I imagine he might make $50.00 a week, somebody that turtled every day."

There was no exception noted to either the court's question or the answer of the witness. There is no merit in the assignment.

The sixth question is: Was it error to set aside the verdict against the defendant Glenn, and to enter judgment in his favor?

Here plaintiff Paul and Mrs. Garnett joined forces in arguing that the court erred in setting aside the verdict against the defendant Glenn. They say the evidence shows that Glenn was guilty of gross negligence as found by the jury rather than ordinary negligence as a matter of law as determined by the court.

The evidence of Glenn's negligence, if any, largely came from the plaintiff himself, and his case can rise no higher than his own testimony. Paul practically absolves Glenn from any negligence. He testified that as Glenn approached the "yield" sign at the intersection he stopped; that at that time neither saw the Garnett car approaching; that when the truck started again "I seen the vehicle coming and I hollered, I told him 'to look out, there comes a car up the road,' and he stopped. * * * His front wheels had just gotten up into [Route] 33 * * *."

It is agreed by all parties that the Glenn truck was stopped well on its side of the road at the time of the collision. It in no way impeded the progress of the Garnett car in its lawful lane of travel. The court properly held that as a matter of law Glenn was not guilty of gross negligence.

We find no reversible error in the record, and the judgment is

*Affirmed.*